**INFORMATION RESOURCES, INC., a Corporation, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 91–1188.

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1992.

W.D. Masterson, Kilgore & Kilgore, Dallas, Tex., for plaintiff-appellant.

Marvin Collins, U.S. Atty., Louise P. Hytken, Asst. U.S. Atty., Tax Div., Dept. of Justice, Dallas, Tex., Gary R. Allen, Chief, Mary F. Clark, Robert S. Pomerance, Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before WILLIAMS, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The Internal Revenue Service ("I.R.S.") erroneously filed tax liens against Information Resources, Inc. Information Resources brought suit for damages for both the erroneous filing of the liens and the failure to issue a timely release of the liens pursuant to 26 U.S.C. §§ 7432 and 7433. The district court granted the government's motion for summary judgment because Information Resources failed to exhaust its administrative remedies. Information Resources admits that it did not exhaust its administrative remedies but urges that an exception to the doctrine of exhaustion of administrative remedies should apply. Because the administrative remedy is inadequate under Section 7432, and because there were no applicable administrative remedies to exhaust under Section 7433, we reverse the summary judgment.

## I. FACTS

Information Resources, Inc. is a Texas corporation engaged in the business of sell-

ing computer software. The company failed to pay on time its federal withholding taxes for the fourth quarter of 1988. As of March 20, 1989, Information Resources had paid less than $23,000 of its tax liability of $44,837.82. On or before April 10, 1989, Information Resources made a further payment of $10,000 in satisfaction of its tax liability. This left an unpaid balance of $16,403.87. On April 10, 1989, it received a Letter 1058–Notice of Intent to Levy from the I.R.S. The letter granted Information Resources ten days to pay the amount owed or a lien would be filed against the company's property.

On April 20, 1989, David Salinas, a representative of Information Resources, met with I.R.S. Officer Kriss Brooks to discuss payment of the obligation. Information Resources claims the parties entered into the following agreement: Information Resources offered to pay the full amount of taxes owed on April 21, 1991, but Brooks stated he would not be in his office that day because it was his scheduled day off. Therefore, the parties agreed that Information Resources would pay the full amount on April 24, 1991. Pursuant to this alleged agreement, Brooks agreed not to institute any enforced collection action against the company. The government denies the existence of any such agreement. Whether there was an agreement is, of course, an issue of fact which ultimately must be determined by a trial court if it is relevant.

On April 24, 1989, Information Resources delivered to Brooks a check in the amount of $16,785.44, representing full satisfaction of its tax liability plus accrued interest. Brooks accepted the check and duly noted his initials either upon the check or upon a copy of the check.

Despite the alleged agreement between the parties, Brooks instituted an enforced collection action on April 21 by filing a request for a Notice of Federal Tax Lien. The liens were filed on April 25 and 26, the first two days immediately following full payment of the debt. On April 25, the federal tax liens were filed in the Dallas County Clerk's Office and on April 26, in the Office of the Secretary of State of

Texas in Austin. Even upon receipt of payment in full for the taxes on April 24, Brooks did not attempt to prevent the filing of the liens on April 25 and 26. Information Resources became aware of the existence of the liens when notice of the liens was published on April 27, 1989, in the Daily Commercial Record, a Dallas legal newspaper.

At this time in early 1989, Information Resources was competitively bidding against several other companies to sell a software package to Ward Petroleum, Inc. Due to the filing of the liens, Ward Petroleum became concerned with the continuing operation of Information Resources, and Ward Petroleum, therefore, decided to reject the company as a bidder. In a deposition, Richard Tozzi, Chief Financial Officer for Ward Petroleum, testified that Ward Petroleum's evaluation of Information Resources was significantly influenced by the filing of the Federal tax lien. Upon learning of the tax lien, Ward Petroleum then solicited an additional bid for the software application from Artesia and ultimately awarded the project to Artesia.

On or about April 27, 1989, David Salinas spoke to Sherene Johnson, an advisor at the Special Procedures Section–Lien Section of the I.R.S., and requested a description of the administrative remedies to obtain a release of an erroneously filed tax lien. Johnson informed Salinas that Information Resources should send a letter to the Internal Revenue Service requesting a release of the lien. Johnson was incorrect as to the precise procedures to follow.

On May 1, 1989, Information Resources sent a letter to Brooks at the Internal Revenue Service in Farmers Branch, Texas, respectfully requesting that Certificates of Release be issued for the tax liens. Both the company and the federal government now recognize that this was not the correct method for obtaining a Certificate of Release. The letter should have been sent to the District Director of the I.R.S., and it should have been accompanied by proof of payment of the tax. The liens were not removed until September 22,

1989, nearly five months after Information Resources requested their removal.

On or about October 25, 1989, Information Resources received a letter written on behalf of the District Director of the I.R.S. apologizing for the concern and inconvenience caused by the "erroneous" filing of the liens on April 25, 1989. Information Resources claims that by the time the release was granted and the apology letter was sent, substantial damages had already occurred.

Information Resources filed a complaint in the district court against the I.R.S. for recovery under 26 U.S.C. §§ 7432 and 7433. Section 7432 provides for the recovery of damages for the I.R.S.'s failure to give a timely release of a federal tax lien and Section 7433 provides for the recovery of damages for the I.R.S.'s intentional or reckless disregard for the provisions of the Internal Revenue Code or regulations promulgated thereunder.

The government filed a motion for summary judgment claiming the district court lacked jurisdiction over the suit because Information Resources had failed to exhaust its administrative remedies. On January 28, 1991, the district court granted the government's motion for summary judgment. It is this dismissal from which Information Resources now appeals.

## II.  26 U.S.C. § 7432

■ Information Resources filed suit pursuant to 26 U.S.C. § 7432 for the I.R.S.'s failure to release a federal tax lien within the requirements of timeliness:

> "(a) If any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a

civil action for damages against the United States in a district court of the United States.

> (b) In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—
>
> (1) actual, direct economic damages sustained by the plaintiff which, but for the actions of the defendant, would not have been sustained, plus
>
> (2) the costs of the action."

26 U.S.C. § 7432 (1988). Section 7432, however, requires exhaustion of all administrative remedies prior to the filing of a lawsuit.[1] The administrative remedies for release of a tax lien are detailed in 26 C.F.R. § 401.6325–1 (1983). A request must be submitted to the district director of the district in which the notice of lien was filed, and it must be marked for the attention of the Chief, Special Procedures Function. 26 C.F.R. § 401.6325–1(f). The request must contain (1) the name and address of the taxpayer; (2) a copy of the notice of federal tax lien; and (3) the grounds upon which the issuance of a release is sought. *Id.*[2]

Information Resources does not claim that it followed the requisite procedures precisely. David Salinas sent a letter to the I.R.S. requesting the release of the erroneously filed lien, but the letter was not sent to the appropriate person. It also was unaccompanied by the necessary supporting materials. The company does allege, however, that it has constructively exhausted the administrative remedies, and to exhaust the remedies now would be futile. Exhausting the administrative remedies would entail obtaining the release of a lien which has already been released.

---

1. "A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7432(d)(1) (1988).

2. It should be noted that subsequent to the events at issue in this case, administrative remedies with respect to the erroneous filing of notice of a federal tax lien were promulgated and

are contained in 26 C.F.R. § 301.6326–1T (1989). Information Resources claims that because new remedies were promulgated, the old remedy—i.e. 26 C.F.R. § 401.6325–1—was necessarily inadequate. This argument is without merit. The administrative remedies promulgated at the time the liens in question were filed are the remedies which Information Resources must exhaust.

Information Resources cites numerous cases establishing exceptions to the exhaustion doctrine. *Hessbrook v. Lennon,* 777 F.2d 999, 1003 (5th Cir.1985) ("Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavoidable or are wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action"); *Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corporation,* 489 U.S. 561, 109 S.Ct. 1361, 1375, 103 L.Ed.2d 602 (1989) ("Administrative remedies that are inadequate need not be exhausted"); *Spannaus v. U.S. Dept. of Justice,* 824 F.2d 52, 58 (D.C.Cir.1987) ("Once constructive exhaustion [of administrative remedies] occurs, any available administrative appeal—i.e. actual exhaustion—becomes permissive in the sense in which the term is used here; the requester may pursue it, but his failure to do so does not bar a lawsuit").

■ Although Information Resources is correct as to the numerous exceptions which the courts have applied to the doctrine of exhaustion of administrative remedies, the cases it cites apply only to the judicially created doctrine. There is a distinct difference between statutorily mandated exhaustion of administrative remedies and the judicially created doctrine of exhaustion of administrative remedies. *See Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975); *Power Plant Division, Brown & Root, Inc. v. Occupational Safety and Health Review Commission,* 673 F.2d 111, 115 (5th Cir. Unit B 1982) ("[A]s the Supreme Court reasoned concerning the analogous statutory requirement of a final agency decision, the statutory codification of the agency objection requirement distinguishes the requirement from the classical exhaustion doctrine").

While courts may exercise discretion in applying the judicially created doctrine of exhaustion, such discretion is severely limited with respect to a statutory exhaustion requirement because failure to exhaust deprives courts of jurisdiction. *Townsend v.*

*U.S. Department of Justice I.N.S.,* 799 F.2d 179 (5th Cir.1986) ("When exhaustion is statutorily mandated, the requirement is jurisdictional"); *Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.–DC, Inc.,* 826 F.2d 320, 326–27 (favorably quoting the *Townsend* case). This circuit, for example, has expressly disavowed the futility exception with respect to statutory exhaustion. *Power Plant Division, Brown & Root v. Occupational Safety and Health Review Commission,* 673 F.2d at 115.

■ An exception to a statutorily mandated exception requirement, however, does exist, and it is applicable to the present facts. In *Ramirez–Osorio v. I.N.S.,* 745 F.2d 937, 939 (5th Cir.1984), we held that "exhaustion is not required when administrative remedies are inadequate." In the present case, administrative remedies are inadequate because the lien has already been released. Although the administrative procedure in question is normally adequate, it has been rendered inadequate by the I.R.S. itself. Had the I.R.S. truly believed it was mandatory that the administrative procedures be followed precisely, it should not have released the lien until Information Resources followed the proper procedures. Information Resources did not intentionally disregard the administrative process. In fact, it contacted Sherene Johnson of the I.R.S. in an attempt to ascertain the proper procedures to follow. While Information Resources appears to have acted in good faith, it is questionable whether the I.R.S. similarly acted in good faith. Although Information Resources' request for release of the liens was sent to the wrong person, it is difficult to understand why it still took the I.R.S. over five months to release the liens. Note, however, that Information Resources may not be fully excused for utilizing the wrong procedures. Any potential damages for the I.R.S.'s failure to make a timely release of the lien may be diminished by Information Resources' pursuit of the wrong procedures.

■ We appreciate the importance of the exhaustion requirement and its purpose of

preserving the integrity of the administrative process, and we will excuse the exhaustion requirement only in extraordinary circumstances. This case, however, presents just such a circumstance. Requiring Information Resources to exhaust the administrative procedures would be a useless formality, and the law does not require a party to pursue a useless formality.

A decision to the contrary would allocate to the I.R.S. a power which would be subject to abuse. If we required Information Resources to obtain a release of a lien which has previously been released, this would allow the I.R.S. to release liens in an unorthodox manner, and if a party later brought suit, the I.R.S. could then require them to expend time and money having the lien released through the proper administrative procedures. We do not insinuate that this is what the I.R.S. did. But it is at least passing strange that after the I.R.S. is on record as apologizing for its error in filing the liens it continues to demand a useless procedure to remove them. We do suggest that forcing Information Resources to exhaust this useless procedure, which has no available remedy, would provide the I.R.S. with the potential for abuse.

The purpose of administrative procedures is to allow an agency to grant relief. The administrative procedures in question enable a party to have a lien released. Because the I.R.S. has already granted the relief provided by the administrative procedures, they now provide no remedy at all.

The district court, therefore, erred in granting the summary judgment as to Section 7432 for failure to exhaust administrative remedies.

### III. 26 U.S.C. § 7433

Information Resource also brought suit pursuant to 26 U.S.C. § 7433.[3] Section 7433, like Section 7432, requires that all administrative procedures be exhausted prior to filing a lawsuit.[4] The government again alleges that the administrative remedies have not been exhausted because the lien in question was not properly released. Information Resources, however, is suing the government under Section 7433, not because of delay in the removal of the lien, but, instead, because Brooks, in filing the lien, recklessly or intentionally disregarded 26 U.S.C. §§ 6321 and 6331.[5] Information Resources claims that it did not refuse to pay its taxes after a demand by the I.R.S. Instead, it allegedly made arrangements with Brooks to pay the full amount. Thus, by filing a lien on the company's property after the taxes had already been paid, Brooks, according to Information Resources, recklessly or intentionally violated the Code.

■ The government contends that Information Resources' complaint alleges damages only due to failure to release the lien, not damages due to the filing of the lien. The government asserts that this

---

**3.** "(a) If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such action.

(b) In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $100,000 or the sum of—

(1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional actions of the officer or employee, and

(2) the costs of the action." 26 U.S.C. § 7433 (1988).

**4.** "A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1) (1988).

**5.** 26 U.S.C. § 6321 (1986) provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Under Section 6331, if the taxpayer's neglect or refusal to pay the tax persists for ten days after notice and demand, the IRS may levy upon his property in order to collect the tax. 26 U.S.C. § 6331 (1988).

means Sections 6321 and 6331 are not at issue in this case. While it is true that the company's complaint did not specifically mention either Section 6321 or Section 6331, the complaint did set out facts sufficient to give the government fair notice of a claim under Section 7433 based on alleged violations of Sections 6321 and 6331.[6]

Asserting facts sufficient to give the government notice is all that is required in the federal system. *O'Quinn v. Manuel,* 773 F.2d 605, 608 (5th Cir.1985) ("[W]e remain faithful to the liberal notice-pleading requirement of the Federal rules and note that often the litigants may plead generally and discover the precise factual basis for their claim through equally liberal pretrial discovery procedures"); *Jamieson By and Through Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir.1985) ("The policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding an excessive formalism"); *Rathborne v. Rathborne,* 683 F.2d 914, 917 n. 8 (5th Cir.1982) ("[A] complaint need not correctly categorize the legal theories giving rise to the claims; it must merely allege facts upon which relief can be granted"). Information Resources' complaint is sufficient to include a claim under Section 7433 based on violations of 26 U.S.C. §§ 6321 and 6331 for improper filing of a lien.

The I.R.S. argues that even if the complaint includes violations of Sections 6321 and 6331, the I.R.S. did not violate either of those sections. Whether those sections were violated, as well as whether Information Resources reached an agreement with Brooks as to payment of its obligations, are questions of fact to be decided by a trial court.

■ We now turn to whether Information Resources has properly exhausted its administrative remedies under Section 7433. Because Information Resources is suing for damages caused by the erroneous filing of a lien, as opposed to damages caused by non-removal of the lien, it is unnecessary for the lien to be removed through administrative procedures prior to the filing of this suit. The damages claimed were caused by filing the lien, not by maintaining it. Thus, 26 C.F.R. 401.-6325.1 is not a jurisdictional prerequisite to this cause of action under 26 U.S.C. § 7433. Furthermore, we can find no administrative remedies which Information Resources needed to exhaust prior to filing of this suit. The IRS was not being asked to take any remedial action, the core of any administrative process. A private cause of action for damages under 26 U.S.C. § 7433 was Information Resources' only remedy for intentional or reckless filing of an erroneous lien. Therefore, the district court does have jurisdiction to hear this claim.

## IV. CONCLUSION

Although exhaustion of administrative remedies is statutorily mandated, the present case beyond cavil can call forth no administrative remedy at all. Thus, the district court erred in granting the summary judgment as to claims under 26 U.S.C. § 7432 and 26 U.S.C. § 7433. We reverse the summary judgment granted by the district court.

**REVERSED.**

---

**6.** In the section of the Plaintiff's Complaint entitled "I.R.C. Section 7433 Liability," Taxpayer makes the following assertions:

4.02. In connection with the collection of Plaintiff, IRI's 941 Tax liability for the tax period ending 12/31/88, Defendant caused a Federal Tax Lien to be filed as hereinbefore alleged and more fully set forth.

4.03. Defendant caused such Federal Tax Lien to be filed on April 25, 1988.

4.04. Defendant was not authorized to file such a Federal Tax Lien for the reason that Plaintiff had already satisfied the full amount of the liability at a time prior to the filing of the Federal Tax Lien.