United States Court of Appeals,

Fifth Circuit.

No. 92-1585.

INFORMATION RESOURCES, INC., a corporation, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

July 30, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before REAVLEY, GARWOOD and LAKE[1], Circuit Judges.

REAVLEY, Circuit Judge:

This is a Taxpayer Bill of Rights case. Information Resources, Inc. sued the United States, claiming that the Internal Revenue Service (IRS) erroneously filed tax liens on its property and failed to timely release those liens. Following a bench trial, the district court awarded Information Resources $1,000. Information Resources appeals, claiming that the district court erred in (1) rejecting its demand for a jury trial, (2) awarding only $1,000 in damages, and (3) failing to award attorney's fees. We affirm.

## I. BACKGROUND

Information Resources sells computer software. It was delinquent in paying its federal employee withholding taxes for the fourth quarter of 1988. On April 10, 1989, Information Resources received a Notice of Intent to Levy, indicating that the IRS could file a notice of tax lien if Information Resources did not satisfy its tax liability within ten days. On or about April 18, 1989, Information Resources hired a tax expert, David Salinas, to assist in settling this matter with the IRS. On April 20, 1989, David Salinas met with IRS Officer Kriss Brooks. According to Information Resources, Brooks promised that he would not file a notice of federal tax lien or institute an enforced collection action if Information Resources paid the taxes by April 24, 1989. Despite this alleged agreement, Brooks initiated on April 21, 1989 the IRS procedures necessary to file notices of tax lien.

---

[1]District Judge of the Southern District of Texas, sitting by designation.

On April 24, 1989, Information Resources delivered to Brooks a company check covering the unpaid taxes plus accrued interest and penalties. Brooks accepted the check but did not attempt to prevent the filing of the notices of federal tax liens. On April 25, 1989, the notices of federal tax liens were filed in the Dallas County Clerk's Office and the Texas Secretary of State's Office, pursuant to Brooks's request of April 21, 1989.

After several attempts by Salinas to obtain a release, the IRS finally issued a Certificate of Release of Federal Tax Lien on September 22, 1989. Some time after the issuance of the tax lien, Salinas wrote the district director of the IRS requesting his acknowledgment that the IRS erroneously filed the liens against Information Resources. In October 1989, the IRS sent a letter to Information Resources apologizing for the "erroneous" filing of the liens.

In November 1989, Information Resources brought this lawsuit pursuant to I.R.C. §§ 7432 and 7433, claiming that the IRS erroneously filed liens on its property and failed to timely release those liens. Information Resources asserts that IRS's wrongful conduct caused it to lose a lucrative business deal with Ward Petroleum Company for the sale of a computer software package. According to Information Resources, Ward Petroleum was interested in purchasing a software package until it discovered the federal tax liens. In addition to seeking lost profits, Information Resources seeks to recover the expenses that it incurred in hiring Salinas to negotiate the release of the tax liens.

In January 1991, the district court entered summary judgment in favor of the government on the ground that Information Resources failed to exhaust its administrative remedies. On appeal, this court held that the administrative remedy available under I.R.C. § 7432 was inadequate and that Information Resources had no administrative remedies under I.R.C. § 7433 to exhaust. 950 F.2d 1122.[2] This court reversed the district court's summary judgment and remanded the action. *Id.* at 1128.

_____

[2]Subsequent to our decision, the Department of Treasury promulgated regulations specifically addressing the administrative remedies available for actions brought under I.R.C. §§ 7432 and 7432. *See* 26 C.F.R. §§ 301.7432-1; 301.7433-1. Those regulations apply to actions filed after January 30, 1992.

On remand, the district court denied Information Resources's demand for a jury trial. At trial, the government defended against both liability and damages. Following the bench trial, the district court determined that the IRS negligently failed to release the liens against Information Resources (§ 7432) and recklessly or intentionally disregarded the IRS regulations concerning the release of the liens (§ 7433). The district court found that Information Resources's failure to obtain Ward Petroleum's business was not due to the filing of the tax liens. Accordingly, the district court did not award Information Resources any damages for lost profits. The district court did, however, award Information Resources $1,000 for expenses incurred in hiring Salinas to negotiate release of the tax liens. Finally, the district court denied Information Resources's request for the attorney's fees that it incurred in pursuing this lawsuit.

Information Resources appeals, arguing that (1) it has a right to a jury trial, (2) the district court erred in awarding only $1,000, and (3) the district court erred in not awarding attorney's fees.

## II. ANALYSIS

Information Resources brought this action pursuant to I.R.C. §§ 7432 and 7433, which Congress enacted in 1988 as part of the "Taxpayers Bill of Rights." Section 7432 provides:

> (a) In general.—If any officer or employee of the [IRS] knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.
>
> (b) Damages.—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—
>
> > (1) actual, direct economic damages sustained by the plaintiff which, but for the actions of the defendant, would not have been sustained, plus
> >
> > (2) the costs of the action.

I.R.C. § 6325, the provision applicable in determining liability under I.R.C. § 7432, requires the IRS to issue a certificate of release of lien "not later than 30 days after the ... Secretary finds that the liability for the amount assessed, together with all interest in respect therof, has been fully satisfied...."

Section 7433 provides:

> (a) In general.—If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the [IRS] recklessly or intentionally disregards any provision of

this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States....

(b) Damages.—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $100,000 or the sum of—

      (1) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional actions of the officer or employee, and

      (2) the cost of the action.

Information Resources based its § 7433 claim on the IRS's reckless or intentional disregard of I.R.C. §§ 6321, 6322, and 6325. I.R.C. § 6321 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property...." I.R.C. § 6322 provides that "the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied...."

## A. DEMAND FOR A JURY TRIAL

Information Resources asserts that it has a Seventh Amendment right to a jury trial. Information Resources is wrong. The Seventh Amendment provides a right to a jury trial in "suits at common law." At common law, there was no right of action against a sovereign. *Galloway v. United States,* 319 U.S. 372, 388, 63 S.Ct. 1077, 1086, 87 L.Ed. 1458 (1943); *Mathes v. Commissioner,* 576 F.2d 70, 71 (5th Cir.1978), *cert. denied,* 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979). So the Seventh Amendment is inapplicable in actions against the United States. *Lehman v. Nakshian,* 453 U.S. 156, 160, 162 n. 9, 101 S.Ct. 2698, 2701, 2702 n. 9, 69 L.Ed.2d 548 (1981).

A right to a jury trial against the United States exists only if Congress has created such right by statute. In *Lehman,* the Court recognized that Congress has generally prohibited trial by jury in actions against the United States. Given this traditional practice of Congress, the *Lehman* Court concluded that a "plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that right by statute." *Id.* at 168, 101 S.Ct. at 2705.

Information Resources brought this action under §§ 7432 and 7433. Neither provision mentions a right to a trial by jury, and we have found no legislative history demonstrating that Congress intended to confer such a right. *See id.* at 165-66, 101 S.Ct. at 2704 ("[I]t is unnecessary to go beyond the language of the statute itself to conclude that Congress did not intend to confer a right to trial by jury.... But it is helpful briefly to explore the legislative history, if only to demonstrate that it no more supports [a right to a jury trial] than does the statutory language itself."). Congress has not "affirmatively and unambiguously" granted a right to a jury trial to plaintiffs bringing actions under § 7432 or § 7433.[3]

In a final effort to convince us of its right to a jury trial, Information Resources argues that its action falls under 28 U.S.C. § 1346(a)(1), which provides district courts with original jurisdiction in

> [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

A taxpayer bringing an action pursuant to § 1346(a)(1) is entitled to a jury trial, as explicitly provided in 28 U.S.C. § 2402.[4] But § 1346(a)(1) involves actions to *recover* internal revenue taxes, penalties, or other sums alleged to have been wrongfully assessed or collected. Information Resources does not seek to recover amounts collected by the IRS. Rather, it seeks damages for lost profits caused by the IRS's filing of a lien and failure to timely release that lien. We reject Information Resources's attempt to obtain a jury trial pursuant to 28 U.S.C. §§ 1346(a)(1) and 2402.

## B. DAMAGES

---

[3]Information's reliance on *United States v. Pfitsch,* 256 U.S. 547, 41 S.Ct. 569, 65 L.Ed. 1084 (1921) is to no avail given the Supreme Court's discussion of *Pfitsch* in *Lehman. See Lehman,* 453 U.S. at 165 n. 13, 101 S.Ct. at 2704 n. 13. Under *Lehman,* which was decided several years before Congress enacted I.R.C. §§ 7432 and 7433, the test is whether Congress has affirmatively and unambiguously departed from its normal practice of not providing a right to trial by jury in an action against the United States.

[4]Section 2402 provides that "any action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury." 28 U.S.C. § 2402. In *Lehman,* the Court recognized that § 2402 is an exception to Congress' usual practice of not permitting jury trials in actions against the United States. 453 U.S. at 161 n. 8, 101 S.Ct. at 2702 n. 8.

Information Resources has three complaints concerning the district court's damage award of $1,000. First, it contends that the district court erred in finding that IRS's conduct did not cause Information Resources to lose Ward Petroleum's business. Second, it contends that the court should have awarded $2,500, rather than $1,000, for costs incurred in negotiating a release of the tax liens. Third, Information Resources contends that the district court improperly excluded its evidence of loss of goodwill.

*1. Lost Profits*

Information Resources contends that the IRS's wrongful conduct caused it to lose a potential customer, Ward Petroleum. In 1989, Ward Petroleum sought to acquire a software system to run its business activities. It sent requests for proposals to fifteen companies. After receiving responses, Ward Petroleum selected three companies, including Information Resources, for on-site visits. After the initial on-site visit to Information Resources's facility, Ward Petroleum did not eliminate Information Resources from consideration. Ward Petroleum ruled out the other two companies following the on-site visits to their facilities. The bidding process, however, remained open. Approximately three weeks after Ward Petroleum's visit to Information Resources, Artesia Data Systems (Artesia) entered the bidding competition.

In July 1989, some time after the on-site visit to Information Resources's facilities, but before Ward Petroleum received the proposal from Artesia, Ward Petroleum learned of the existence of the tax liens on Information Resources's property. After learning of the tax liens, Ward Petroleum became concerned about Information Resources's financial stability. In October 1989, Ward Petroleum expressed its concerns to Information Resources and continued investigating Artesia's proposal. After an extensive investigation into Artesia's operations, Ward Petroleum awarded the contract to Artesia in January 1990.

Following the bench trial, the district court found: the IRS issued Information Resources a certificate of release of tax liens on September 22, 1989; Ward Petroleum did not make a final decision until January 1990; Information Resources did not advise Ward Petroleum that a release of the liens had been obtained; Ward Petroleum was not in a position to say that it would have

purchased the software from Information Resources but for existence of the tax liens; Information Resources's software proposal was inadequate for Ward Petroleum's needs; and Artesia had a more powerful software program that was more appealing to Ward Petroleum. Based on the above findings, the district court found that

> [Information Resources] failed to obtain the Ward Petroleum Company business, not by reason of the filing of the tax lien. [Information Resources] failed to get Ward Petroleum Company's business because its software program was inadequate to meet the needs of Ward Petroleum, in comparison to the more powerful software offered by Artesia Data Systems.

We review the district court's fact findings for clear error. Richard R. Tozzi, Ward Petroleum's chief financial officer, testified that when he learned of the tax liens, he felt that Ward Petroleum should not waste time with a company having financial problems. When asked specifically whether the existence of the tax liens was the reason for not doing business with Information Resources, Tozzi testified, "It could be considered one of the reasons, yes. But it's all speculative from that point forward." Tozzi's testimony suggests that the tax liens did create a problem, but that it would be speculative to conclude that "but for" the existence of the tax liens Information Resources would have earned the contract. As for the superiority of Artesia's software, the government presented evidence that Artesia's software package was more powerful and better-suited to Ward Petroleum's needs than Information Resources's software package.

Based on our review of the record, we cannot conclude that the district court clearly erred in finding that the IRS's filing of tax liens did not cause Information Resources to lose the contract with Ward Petroleum.

2. *Costs Incurred in Negotiating Release of Tax Liens*

The district court found that Information Resources paid Salinas an initial retainer fee of $1,500 and later paid him an additional $1,000. In its determination of damages, the district court held that Information Resources should recover $1,000 for expenses incurred in retaining Salinas to obtain a release of the tax liens. On appeal, Information Resources contends that the district court should have awarded the entire $2,500 that Information Resources paid to Salinas. Salinas was retained, however, before the tax lien notices were even filed. Information Resources fails to explain to us why it is entitled to the entire $2,500. We hold that the district court did not err in awarding

Information Resources $1,000 for expenses incurred in retaining Salinas to obtain a release of the tax liens.

### 3. Loss of Goodwill

Approximately one week before the trial, Information Resources supplemented its discovery responses to include a claim for loss of goodwill in the amount of $2.4 million. Before then, Information Resources's discovery responses claimed only $100,357 in damages. Because of Information Resources's delay, the district court refused to allow Information Resources to introduce evidence of loss of goodwill. The district court did not abuse its discretion.

### C. ATTORNEY'S FEES

I.R.C. § 7430 governs the district court's award of costs and fees to a litigant in a tax case: "In any ... court proceeding which is brought by or against the United States *in connection* with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded ... reasonable litigation costs incurred in connection with such court proceeding" (emphasis added). *See Huckaby v. United States Dept. of Treasury,* 804 F.2d 297, 298 (5th Cir.1986) (applying I.R.C. § 7430 to taxpayer's action brought pursuant to I.R.C. § 7431).[5] "Reasonable litigation costs" includes reasonable attorney's fees.[6] To recover reasonable litigation costs, the litigant must qualify as a "prevailing party," which is defined as a party

> (i) which establishes that the position of the United States in the proceeding was not substantially justified [and]
>
> (ii) which—
>
>> (I) has substantially prevailed with respect to the amount in controversy, or
>>
>> (II) has substantially prevailed with respect to the most significant issue or set of issues presented....

I.R.C. § 7430(c)(4)(A). The district court below determined that the government was substantially

---

[5] The language "in connection with" is broad enough to permit taxpayers to recover fees in actions brought under I.R.C. § 7432 and § 7433. The applicability of § 7430 precludes recovery of attorney's fees under the Equal Access to Justice Act. 28 U.S.C. § 2412(e); *see Smith v. Brady,* 972 F.2d 1095, 1099 (9th Cir.1992).

[6] But such fees shall not be in excess of $75 per hour unless the court determines that an increase costs of living or a special factor justifies a higher rate. I.R.C. § 7430(c)(1)(B)(iii).

justified in defending against Information Resources's damage claims and refused to award Information Resources attorney's fees.

A position is "substantially justified" if "there is a reasonable basis both in law and in fact." *Portillo v. Commissioner,* 988 F.2d 27, 28 (5th Cir.1993). The government's failure to prevail on a liability issue does not mandate a determination of lack of substantial justification. *See Heasley v. Commissioner,* 967 F.2d 116, 120 (5th Cir.1992).

Information Resources bears the burden of establishing that the government's position was not substantially justified. *Estate of Johnson v. Commissioner,* 985 F.2d 1315, 1318 (5th Cir.1993). We have found no indication in the record that Information Resources attempted to establish lack of substantial justification in the district court. On appeal, Information Resources states that it has "[e]stablished that the position of the United States in the proceeding was not substantially justified." But that is the full extent of Information Resources's argument on appeal. We have no trouble concluding that the government was substantially justified in defending against the alleged damages. And our review of the record reveals that the government was also substantially justified in defending against Information Resources's claim that the IRS "recklessly or intentionally" disregarded procedures for filing the liens.[7] We do, however, have some questions about the government's defense against liability under § 7432 for failure to timely release a lien. But because Information Resources did not attempt to establish lack of substantial justification in the court below and has not provided us a basis for finding lack of substantial justification, we cannot conclude that the court abused its discretion in denying fees under § 7430.[8]

---

[7]The government's defense was based on Officer Brooks's testimony that (1) he did not agree to wait until April 24, 1989 to file the tax liens, (2) he requested an expedited tax lien on April 21, 1989, (3) when he finally received Information Resources's check on April 24, 1989, it was too late for him to stop the filing of the liens, and (4) he could have obtained an immediate release of the lien if Information Resources had paid with a certified check. (Despite Brooks's testimony, the district court found that Brooks agreed to refrain from filing the tax liens until April 24, 1989.) The government also presented evidence that the October 12 letter from the IRS apologizing for the filing of an "erroneous" lien was sent before a full investigation into the facts.

[8]Information Resources argues that it is entitled to attorney's fees under § 7432 and § 7433, the two sections that serve the basis of this lawsuit. Both sections provide that, "upon a finding of liability on part of the defendant, the defendant shall be liable [for] ... *the costs of the action.*" I.R.C. §§ 7432(b), 7433(b) (emphasis added). But the term "costs" does not include attorney's

AFFIRMED.

_____

fees.