John C. CALHOUN, III, Plaintiff,

v.

USDA FARM SERVICE AGENCY, Defendant.

Civil Action No. 4:95cv365-D-B.

United States District Court, N.D. Mississippi, Greenville Division.

March 12, 1996.

Preston Davis Rideout, Greenwood, Mississippi, for Plaintiff.

Ralph Dean, Oxford, Mississippi, for Defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Presently before the court is the motion of the plaintiff for preliminary injunctive relief pursuant to Fed.R.Civ.P. 65, and the defendant's motion to dismiss or for summary judgment on the plaintiff's claims. Finding that the plaintiff has failed to demonstrate a substantial likelihood that he will prevail on the merits of this action, based upon his failure to exhaust available administrative remedies, the motion for preliminary injunctive relief shall be denied, and the motion to dismiss or for summary judgment shall be granted.

### Factual Background

Most of the basic facts surrounding this case are not in dispute between the parties. The plaintiff in this cause, Mr. John C. Calhoun, III, borrowed approximately $410,-000.00 in loan assistance from the United States of America, Department of Agriculture, through the Farmers Home Administration[1], during the period of May 1974 to May of 1982. Mr. Calhoun defaulted on the repayment of these loans, and the Federal Land Bank of New Orleans foreclosed upon the 587 acres of land in Carrol County, Mississippi, which stood as partial security for the debt. The FmHA bought the 587 acres at the foreclosure sale, and title was transferred to the United States by deed dated December 20, 1983.

After the purchase of the property by FmHA, there were numerous communications between FmHA officials and Mr. Calhoun. In 1990, Mr. Calhoun made an offer to buy the property contingent upon FmHA financing. FmHA declined the offer by letter dated November 2, 1990. FSA[2] then offered the property to the public for sale on February 16, 1995, and Calhoun again made an offer to purchase the property. This time, however, Calhoun had obtained private financing for the purchase. Calhoun was placed in a class with several other prospective purchasers, and "straws were drawn" to determine which prospective buyer would be permitted to purchase the property. Mr. Calhoun was not chosen.

Mr. Calhoun filed this action to challenge his placement with other potential purchasers of the property for purposes of the 1995 offer to sell the property. His contention is

---

1. In 1994, Congress created the Consolidated Farm Service Agency ("FSA"), and delegated to that agency the functions and responsibilities of the Farmers Home Administration which are at issue in this action. 7 U.S.C. § 6932(b)(3) (1995 Supp.). The FSA is the proper defendant in this action.

2. *See* note 1, *supra.*

that pursuant to 7 U.S.C. § 1985(e)(1)(C)(i), FSA is required to give him preference over all other persons seeking to purchase this property, and he seeks injunctive relief from this court to prevent the transfer of the title of this property from the United States to the successful bidder.[3]

## DISCUSSION

### I. STANDARD FOR THE GRANTING OF A PRELIMINARY INJUNCTION

 In making its ruling on the propriety of a preliminary injunction, this court is bound by the considerations contained in the decision of *Canal Authority of Florida v. Callaway* and its progeny. *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). Pursuant to this authority, the plaintiff in this matter has the burden of demonstrating to this court four specific criteria:

> (1) a substantial likelihood that plaintiff will prevail on the merits;
> (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;
> (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and,
> (4) that granting the preliminary injunction will not disserve the public interest.

*Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir.1995) (citing *Canal Authority*, 489 F.2d at 572); *Cherokee Pump & Equip. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994) (same). It is incumbent upon the plaintiff to demonstrate all of the four factors, and the failure to demonstrate any one of the four is sufficient to the court to deny the issuance of an injunction. "A preliminary injunction is an extraordinary remedy. It should only be granted if the movant has clearly carried the burden of persuasion on all four *Callaway* prerequisites. The decision to grant a preliminary injunction is to be treated as the exception rather than the

rule." *Cherokee Pump,* 38 F.3d at 249 (quoting *Mississippi Power & Light v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985) (emphasis added)).

### II. LIKELIHOOD OF PREVAILING ON THE MERITS

#### A) THE EXHAUSTION OF ADMINISTRATIVE REMEDIES

 At the time that the defendant offered the property for public sale, Mr. Calhoun had available to him an organized appeal process within which to challenge his status among the prospective purchasers. Further, FSA informed him of such an appeal process at the time they informed Calhoun that he was being categorized with the other purchasers. Mr. Calhoun had previously, although unsuccessfully, made similar appeals of prior adverse decisions by the FSA. FSA informed the plaintiff of its decision to place him in "Category V"[4] along with other persons who wished to purchase the subject property by letter dated May 10, 1995. An attachment to the letter stated that he had thirty (30) days within which to appeal that decision. The plaintiff filed an appeal of his classification on November 22, 1995. On December 5, 1995, the National Appeals Staff denied Calhoun's appeal as untimely.

The defendant argues that Mr. Calhoun failed to exhaust his administrative remedies, and that therefore his request for injunctive relief should be denied and his case dismissed. Mr. Calhoun does not dispute that he failed to exhaust his administrative remedies, but urges this court to apply an exception to the exhaustion requirement and permit his claim to go forward.

The requirement that a plaintiff exhaust his administrative remedies can be of two types: 1) it can be mandated by federal statute, or 2) it can be imposed through the judicially-created doctrine of exhaustion. "There is a distinct difference between statu-

---

**3.** Based upon the representations of the parties as well as the successful bidder at oral argument of this matter, the court understands that while some details of the sale are yet to be final, complete transfer of the subject property is set to occur on or about March 15, 1996.

**4.** The classification scheme used by FSA in this determination is located at 7 C.F.R. § 1955.107 ("After leaseback/buyback and homestead protection rights have expired or been waived, suitable farmland must be sold in priority outlined in paragraph (f)(1) of this section.").

torily mandated exhaustion of administrative remedies and the judicially created doctrine of exhaustion of administrative remedies." *Information Resources, Inc. v. United States,* 950 F.2d 1122, 1126 (5th Cir.1992); *see also Power Plant Div., Brown & Root, Inc. v. Occupational Safety & Health Review Comm.,* 673 F.2d 111, 115 (5th Cir. Unit B 1982).

When the requirement is mandated by statute, exhaustion becomes a jurisdictional prerequisite to maintaining an action. *E.g., Wilson v. Sec., Dept. of Veterans Affairs,* 65 F.3d 402, 404 (5th Cir.1994) (stating statutory exhaustion jurisdictional prerequisite to Title VII action); *Shah v. Quinlin,* 901 F.2d 1241, 1244 (5th Cir.1990) (stating statutory exhaustion jurisdictional prerequisite to claim under Federal Tort Claims Act); *Gustin v. Internal Revenue Serv.,* 876 F.2d 485, 488 (5th Cir.1989) (stating statutory exhaustion jurisdictional prerequisite to claim for refund of federal income taxes). Judicial discretion in the application of statutorily mandated exhaustion is severely limited. Nonetheless, a few narrow exceptions still may apply. *E.g., Greater Slidell Auto Auction, Inc. v. American Bank & Trust Co.,* 32 F.3d 939, 942 n. 2 (5th Cir.1994) (noting exceptions to statutory exhaustion where 1) claimant asserts constitutional challenge collateral to his substantive claim, 2) administrative system itself is unlawful or unconstitutional, or 3) "administrative remedies are inadequate.").

Not every federal statute which provides for administrative review mandates exhaustion as a requisite for judicial review, however. In order for exhaustion to be mandated by statute, and thereby jurisdictional, Congress must have specifically provided for such. *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291, 299 (1992) ("Where Congress specifically mandates, exhaustion is required."). Congress has heretofore been very explicit when it has determined exhaustion to be a jurisdictional prerequisite to federal court jurisdiction. For example:

No suit or proceeding shall be maintained in any court for the recovery for any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

*United States v. Williams,* 514 U.S. ——, —— n. 5, 115 S.Ct. 1611, 1616 n. 5, 131 L.Ed.2d 608, 615 n. 5 (1995) (citing 26 U.S.C. § 7422(a) for proposition that exhaustion required to waive sovereign immunity, conferring jurisdiction over claims involving income tax liens).

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency ...

*McNeil v. United States,* 508 U.S. 106, 107 n. 1, 113 S.Ct. 1980, 1981 n. 1, 124 L.Ed.2d 21, 25 n. 1 (1993) (citing 28 U.S.C. § 2675(a) of Federal Tort Claims Act); *see Shah,* 901 F.2d at 1244 (exhaustion jurisdictional prerequisite to claim under FTCA).

The judicially created doctrine of exhaustion, however, is more flexible. The general rule remains that a party is required to exhaust available administrative remedies before arriving at the federal courthouse to seek relief. *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291, 299 (1991). However, "where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy,* at 144, 112 S.Ct. at 1086, 117 L.Ed.2d at 299; *Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 518, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172, 189 (1982) (White, J., concurring in part) ("[E]xhaustion is 'a rule of judicial administration,' [cites omitted] and unless Congress directs otherwise, rightfully subject to crafting by judges."). This discretion includes the

options of applying several exceptions to the exhaustion requirement not available in the context of statutorily-required exhaustion. *See Information Resources,* 950 F.2d at 1126 ("Although Information Resources is correct as to the numerous exceptions which the courts have applied to the doctrine of exhaustion of administrative remedies, the cases it cites apply only to the judicially created doctrine."); *Gardner v. School Board Caddo Parish,* 958 F.2d 108, 111 (5th Cir.1992) (noting exception to judicially created doctrine when exhaustion would be "futile.").

■ The plaintiff takes the position that there is no specific mandate of exhaustion as a prerequisite to judicial review which governs in the case at bar. Mr. Calhoun argues that the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, *et seq.,* controls the question of this court's jurisdiction in this matter.[5] Since the APA controls, the plaintiff continues, the United States Supreme Court decision of *Darby v. Cisneros* dictates that this court has no discretionary authority to impose a judicially-created exhaustion requirement. *Darby v. Cisneros,* 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). The essence of the *Darby* decision is that federal courts do not have the authority to require a plaintiff to exhaust available administrative remedies under the APA where exhaustion is not specifically mandated as a prerequisite to judicial review by statute or agency rule. *Darby,* 509 U.S. at 152, 113 S.Ct. at 2548, 125 L.Ed.2d at 127. In other words, federal courts cannot impose a judicially-created requirement of exhaustion of administrative remedies for actions governed by the APA, but only a statutory one. *Id.* (stating "[c]ourts are not free to impose an exhaustion requirement as a rule of judicial administration" where APA applies and exhaustion is not statutorily required). Even if an exhaustion requirement does apply, the plaintiff argues that he is entitled to the application of an exception to that requirement—the exception applied to matters of statutory interpretation. *See, e.g., McKart v. United States,* 395 U.S. 185, 199, 89 S.Ct. 1657, 1665, 23 L.Ed.2d 194, 206 (1969) ("Since judicial

review would not be significantly aided by an additional administrative decision of this sort, we cannot see any compelling reason why petitioner's failure to appeal should bar his only defense to a criminal prosecution."); *Commonwealth of Mass. v. Lyng,* 893 F.2d 424, 428 (1st Cir.1990) ("Exhaustion is not mandated where the issue is a matter of law as to which specialized administrative understanding plays little role ....."); *Nierenberg v. Heart Center of Southwest,* 835 F.Supp. 1404, 1407 (M.D.Fla.1993) (noting exception "where the issue involves statutory interpretation.").

## 1) IS THERE A SPECIFIC REQUIREMENT UNDER STATUTE OR AGENCY RULE MANDATING THE EXHAUSTION OF ADMINISTRATIVE REMEDIES IN THIS CASE?

■ As already noted by this court, the *Darby* decision only affects the applicability of the second type of exhaustion requirement—the judicially created doctrine. Therefore, *Darby* only offers the plaintiff solace if there exists no statutory exhaustion requirement in the case at bar. As previously noted, in order to impose a statutory requirement of exhaustion, Congress must specifically provide for such by statute. The defendant, Consolidated Farm Service Agency, is an agency of the United States Department of Agriculture. 7 U.S.C. § 6932. The administrative remedy process available to the plaintiff was via appeal to the National Appeals Division of the Department of Agriculture. 7 U.S.C. § 6991, *et seq.* Relating specifically to the Department of Agriculture and its agencies, 7 U.S.C. § 6912(e) provides:

(e) Exhaustion of administrative remedies

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against—

(1) the Secretary;

(2) the Department; or

---

**5.** The defendant does not argue in its submissions that the APA does not apply in this case, but rather argues that the APA does not provide an independent basis for this court's jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977).

(3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e). "It is hard to imagine more direct and explicit language requiring that a plaintiff suing the Department of Agriculture, its agencies, or employees, must first turn to any administrative avenues before beginning a lawsuit. . . ." *Gleichman v. U.S. Dep't of Agriculture*, 896 F.Supp. 42, 44 (D.Me.1995). This provision imposes upon the plaintiff a jurisdictional prerequisite to the filing of suit against FSA. *Darby* is therefore inapplicable in this case, for there is indeed a statutorily-mandated exhaustion requirement which applies to the plaintiff's claims.

## 2) DOES AN EXCEPTION APPLY FOR STATUTORY INTERPRETATION?

■■■■■ This court has also already noted that while there are several exceptions that may be applied to the judicially-imposed exhaustion requirement, those that apply to a statutory requirement are few. The plaintiff argues in this case that an exception should be applied in this case because the question involved is one of statutory interpretation. In each of the decisions relied upon by the plaintiff for this proposition, the applicable requirement of exhaustion was imposed as a matter of judicial discretion. *E.g., McKart*, 395 U.S. at 193, 89 S.Ct. at 1662, 23 L.Ed.2d at 203 (referring to exhaustion as "judicial doctrine"); *Lyng*, 893 F.2d at 428 ("Since exhaustion is not statutorily mandated, application of the doctrine was within the discretion of the district court."); *Nierenberg*, 835 F.Supp. at 1406 ("ERISA itself does not mandate the exhaustion of administrative remedies . . . however, Courts have generally required [exhaustion.]"); *Ayers v. Espy*, 873 F.Supp. 455, 461 (D.Colo.1994) ("The exhaustion requirement is not jurisdictional, but involves the exercise of judicial discretion."). However, none of those cases analyzed or applied the exception as within the context of a statutory exhaustion requirement. The scope of allowable exceptions in the context of statutorily required exhaustion is extremely narrow, and this court is of the opinion that the "statutory interpretation" exception does not apply outside of the judicially-created doctrine. Indeed, when exhaustion is

statutorily required, this court must dismiss a plaintiff's case even when sending him back to the administrative remedy process would be futile. *Information Resources*, 950 F.2d at 1126 (noting Fifth Circuit "has expressly disavowed the futility exception with respect to statutory exhaustion."). In any event, this court would not be bound to apply an exception, for other courts have utilized their discretion in this context to refuse to apply the "statutory interpretation" exception. *E.g., Action for Children's Television*, 59 F.3d 1249, 1256–57 (D.C.Cir.1995); *Xiao v. Barr*, 979 F.2d 151, 154 (9th Cir.1992). "Indeed, the novelty of the question of statutory interpretation is an additional reason that the court should allow the administrative process to run its course before taking the matter into its own hands." *Action for Children's Television*, 59 F.3d at 1257. Government agencies should generally be allowed the opportunity to address such issues in order to develop a record as to the stated position of the agency, which would provide the court with additional material to consider in making its decision.

The plaintiff has failed to exhaust his administrative remedies in the case at bar. The exhaustion of his administrative remedies in this case is a statutorily-required prerequisite to this court's exercise of jurisdiction in this matter. Mr. Calhoun has likewise failed to carry his burden of proof of establishing any of the available exceptions to statutory exhaustion. In that he has failed to properly exhaust his remedies in this case, it appears to the court that the plaintiff will be unable to maintain this action against the FSA.

## B) THE MERITS OF THE PLAINTIFF'S CLAIM

Even though this court has already determined that the plaintiff appears to be unable to maintain this action, this court nonetheless has concerns regarding the actual merits of his claim. This court is without jurisdiction to determine the issue, but will nonetheless offer a brief discussion of the problem in hope that some sister court may have the opportunity to resolve the matter in the fu-

ture. The relevant statutory language is as follows:

(e)(1)(A)(i) During the 180–day period beginning on the date of acquisition, or during the applicable period under State law, the Secretary shall allow the borrower-owner (as defined in subparagraph (F)), to purchase or lease such property, if such borrower-owner has acted in good faith with the Secretary, as defined in regulations issued by the Secretary, in connection with such loan.

(ii) The period for the purchase or lease of real property described under clause (i), by a person described in clauses (i) or (ii) of subparagraph (C), shall expire 190 days after the date of acquisition, or after the applicable period under State law.

. . . . .

(C) The Secretary shall give preference in the sale or lease, with option to purchase, of property that has been foreclosed, purchased, redeemed, or otherwise acquired by the Secretary to persons in the following order:

(i) the immediate previous borrower-owner of the acquired property, if such borrower-owner has acted in good faith with the Secretary, as defined in regulations issued by the Secretary, in connection with the loan of such borrower-owner for which such property served as security.

7 U.S.C. § 1985. The plaintiff asserts that he is entitled, as the immediate previous borrower-owner of a piece of property, to a "first preference," in the sale of that property by FSA, regardless of when the sale occurs. 7 U.S.C. § 1985(e)(1)(C)(i). The plaintiff charges that he is entitled to this preference **in addition to** his exclusive "leaseback/buyback" right within 180 days of FSA acquiring the property. 7 U.S.C. § 1985(e)(1)(A)(i). FSA charges that § 1985(e)(1)(C)(i) must be read in conjunction with § 1985(e)(1)(A)(i), and that together they create a singular right and opportunity to buy back the property within a specified time period. Since Mr. Calhoun declined to exercise his leaseback/buyback right within 180 days after the acquisition of his former property, FSA argues, the plaintiff is entitled to no further preferential treatment.

This court is not aware of any reported decision addressing this particular dilemma. The problem, however, has not been ignored by legal scholars:

The FmHA contends that previous owners of farm property will only be considered for leaseback/buyback and/or homestead protection prior to voluntary conveyance or foreclosure or in the 180 day period following the FmHA's acquisition of the property. If the previous owner does not choose to exercise her option or the FmHA denies preservation loan servicing, the FmHA asserts that it does not have to give priority to the previous owner in a subsequent sale or lease.

Borrowers contend that even if they do not enter into a leaseback/buyback or homestead agreement with the FmHA prior to acquisition or within 180 days of acquisition, they have a preference if the FmHA later decides to lease or sell the farm property. This argument is based on their understanding of 7 U.S.C. Section 1985(e).

7 U.S.C. Section 1985(e)(1) has five subparagraphs, (A) through (E). Subparagraphs (A)(i), (ii), and (iii) refer to the 180 day period beginning on the date of acquisition of farm property. During this period, the FmHA must allow the borrower from whom it has acquired the real property to purchase or lease the property. Subparagraph (B) refers to the purchase or lease under subparagraph (A) and states that such purchase or lease "shall be on such terms and conditions as are established in regulations promulgated by the Secretary."

Subparagraph (C) requires the FmHA to "give preference in the sale or lease, with option to purchase, of property that has been foreclosed, purchased, redeemed, or otherwise acquired . . . to persons in the following order: (i) The immediate previous borrower-owner of the acquired property."

Subparagraph (D) refers to the case where the property described in subpara-

graph (A) is located within an Indian reservation. Subparagraph (E) states that all rights provided in the subsection are in addition to any state law right of first refusal.

Borrowers argue that subparagraph (C) does not refer back to subparagraph (A). Thus, it adds to any rights afforded within the first 180 day period after the FmHA's acquisition of the property. Borrowers argue that the FmHA must offer priority persons identified in subparagraph (C) the first opportunity to buy or lease if the FmHA decides to lease or sell the property subsequent to the 180 day period. Further support for this argument is that subparagraph (A) only provides the opportunity to purchase or lease to the borrower from whom the FmHA acquired the property. Whereas subparagraph (C) provides the opportunity for purchase or lease to the immediate previous owner, the spouse or child(ren) of the immediate previous owner, the immediate previous family-sized farm operator of the property, or operators of not larger than family-size farms. The FmHA's present regulations encompass this priority scheme within the leaseback/buyback offered within the 180 day period, but not at any later offering for sale or lease.

Joyce Lancaster, *Current Issues in FmHA Loan Servicing*, 23 U.C.Davis L.Rev. 713, 728–30 (Spring 1990). Ms. Lancaster is of like mind with the plaintiff in this matter:

> The FmHA's present regulations apparently conflict with the Act in this respect. Borrowers should be given an opportunity to apply for leaseback/buyback and homestead protection prior to conveyance or within the first 180 day period after the FmHA acquires the real property. All priority individuals (to the extent that a higher priority individual does not apply), should be given the opportunity to apply if the FmHA later decides to sell or lease the property.

Lancaster, *supra* at 730. This court also has serious concerns regarding the existence of a separate right, created under 7 U.S.C. § 1985(e)(1)(C), for previous borrower-owners of property sold by the defendants to have first preference in the sale regardless of the 180–day limitation contained in 7 U.S.C. § 1985(e)(1)(A)(i). Likewise, it does not appear that the language contained in 7 U.S.C. § 1985(e)(1)(A)(ii) was intended to be a limitation on any such separate right created under § 1985(e)(1)(C). Rather, the language referring to subsection (C) only appears to identify what persons will be subject to the 190 day limitation when exercising rights granted under § 1985(e)(1)(A)(i).

If there is indeed a separate right to a "first preference at sale," regardless of what the time limitations might be, a new problem emerges. The Congressional amendments which added subsection (C) to § 1985 were not enacted until the passage of the Agricultural Credit Act of 1987. Pursuant to FSA regulations, individuals such as Mr. Calhoun are not afforded any rights pursuant to the leaseback/buyback provisions of 7 U.S.C. § 1985 as long as those same persons were afforded notice of their rights under § 1985's previous incarnation:

> CONACT property acquired prior to January 6, 1988, will also be considered under this section, but only if the former owner/previous operator was not advised of his or her leaseback/buyback rights under FmHA or its successor agency under Public Law 103–354's previous leaseback/buyback regulation.

7 C.F.R. § 1951.911(a). CONACT property, as defined by another regulation, includes:

> Property acquired or sold pursuant to the Consolidated Farm and Rural Development Act (CONACT). Within this subpart; it shall also be construed to cover property which secured loans made pursuant to the Emergency Agricultural Credit Act of 1984; the Food Security Act of 1985; and other statutes giving agricultural lending authority to FmHA or its successor agency under Public Law 103–354.

7 C.F.R. § 1955.103. Mr. Calhoun does not appear to dispute that his property was acquired by FSA before January 6, 1988, nor that he was informed of his leaseback/buyback rights under previous law. Therefore, even if the plaintiff is entitled to an independent right of "first preference" in the sale of the subject property, the strict application of

this provision of the C.F.R. would deny him the exercise of any such preference.

The plaintiff argues that such an application would arbitrarily deprive him of a specific right granted him by Congress under the Agricultural Credit Act of 1987. It is also the position of the plaintiff that the legislative history of the Agricultural Credit Act of 1987 clearly expresses an intent to afford broad relief and grant citizens such as the plaintiff new rights which they did not possess at the time. While the Seventh Circuit has at least acknowledged this argument, again this court is unaware of any reported decision which has directly addressed the issue. *United States v. Rode,* 996 F.2d 174, 179 (7th Cir.1993) ("On appeal, Rode argues that to the extent that 7 C.F.R. § 1951.911 is applicable it is contrary to the plain intent of the statute to offer distressed farmers the widest availability of relief. This argument also was never presented to the district court and has not been preserved on appeal."). If indeed § 1985(e)(1)(C) creates a separate right of "first preference," that right arises under its terms at the time that FSA sells or leases the property. The regulations promulgated at 7 C.F.R. § 1911.911 appear to prospectively deny that right to those persons whose property was acquired by FSA before January 8, 1988, and who were informed of their rights under prior law. The plaintiff would have this court declare § 1911.911 invalid and enforce his "first preference" rights under 7 U.S.C. § 1985(e)(1)(C)(i). This the court cannot do, for the plaintiff has by his own inaction deprived this court of jurisdiction over his claim by failing to properly pursue his administrative remedies. It is the fervent hope of the undersigned that this matter can be resolved in the near future.[6]

## II. THE REMAINING *CANAL AUTHORITY* REQUIREMENTS

In that this court has already determined that the plaintiff is unable to demonstrate that there is a substantial likelihood that he will prevail on the merits of his action, there is no need for this court to go further and analyze the three remaining considerations under *Canal Authority.* The plaintiff is unable to demonstrate that he is entitled to injunctive relief in this cause.

## III. THE DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The defendant has also filed with the court a Motion to Dismiss or in the Alternative for Summary Judgment. This court has already determined that the plaintiff has deprived this court of jurisdiction by failing to adequately exhaust his available administrative remedies. There is no genuine issue of material fact as to this matter, and the defendant is entitled to the entry of a judgment as a matter of law on the issue. The motion of the defendant shall be granted.

## *CONCLUSION*

After careful consideration, this court is of the opinion that the plaintiff has failed to demonstrate a substantial likelihood that he will prevail on the merits of his action in this cause. Therefore, the plaintiff's motion for preliminary injunctive relief shall be denied. Further, there is no genuine issue of material fact as to the issue of this court's jurisdiction over this cause, and therefore the motion of the defendant for the entry of summary judgment shall be granted.

A separate order in accordance with this opinion shall issue this day.

---

**6.** The potential problem with 7 C.F.R. § 1911.911 arises when it is applied to property which the FSA had already acquired as of January 8, 1988, but had not yet offered for sale. If this matter is not resolved before FSA sells or otherwise disposes of all such property, the point will become moot, and many persons such as the plaintiff may be improperly deprived of a right granted them by Congress.