## GILMER–GLENVILLE, LIMITED PARTNERSHIP, Plaintiff,

v.

## FARMERS HOME ADMINISTRATION, United States Department of Agriculture, et al., Defendants.

### No. 5:99–CV–1951.

United States District Court,
N.D. Ohio,
Eastern Division.

June 16, 2000.

Arthur B. Cunningham, New Philadelphia, OH, David K. Schaffner, John P Maxwell, Thomas W. Hardin, Hardin & Schaffner, New Philadelphia, OH, for Gilmer–Glenville Limited Partnership, Plaintiffs.

Steven J Paffilas, Office Of The United States Attorney, Cleveland, OH, for Farmers Home Administration, United States Department of Agriculture, Rural Development, Defendants.

## OPINION

GWIN, District Judge.

In this action, Plaintiff Gilmer–Glenville Limited Partnership ("Gilmer–Glenville")

asserts claims against Defendant United States Department of Agriculture, Rural Development[1] ("USDA") under the Administrative Procedures Act ("APA"), the Takings Clause of the Fifth Amendment, and for breach of contract. In lieu of a trial, the parties have filed proposed findings of fact and conclusions of law. After reviewing the parties' submissions, the Court enters partial judgment in favor of Plaintiff Gilmer–Glenville.

## I. Background

Plaintiff Gilmer–Glenville, an Ohio limited partnership, owns a subsidized housing complex for senior citizens in West Virginia. In 1985, Gilmer–Glenville financed this complex with a loan from Defendant USDA. The "Loan Agreement" entered into by the parties as part of this transaction lies at the center of the present dispute.

The Loan Agreement requires Gilmer–Glenville to maintain a "Reserve Account" in order to fund occasional capital improvements and incidental expenditures associated with the complex. Similarly-situated borrowers are also generally required to maintain this type of account. The USDA must approve any withdrawal of funds from the Reserve Account.

Concerned with borrowers' frequent misuse of Reserve Account funds, the USDA issued a regulation in 1994 requiring that Reserve Account funds be placed in a supervised bank account. A borrower cannot remove funds kept in such an account absent the USDA's countersignature.

After issuing this regulation, the USDA sent Gilmer–Glenville a new "Deposit Agreement." The Deposit Agreement contains a provision establishing the supervised bank account mandated by the regulation. Another provision grants the USDA a security interest in the Reserve Account funds.

Convinced that the security interest provision establishes an outright assignment of Reserve Account funds to the USDA, Gilmer–Glenville has continually refused to sign the Deposit Agreement. According to Gilmer–Glenville, the USDA has responded by refusing to approve proposed rent and management fee increases, project budgets, and Reserve Account expenditures.

On August 13, 1999, Gilmer–Glenville filed the present action. Seeking review under the APA, Gilmer–Glenville asks the Court to set aside various actions it says the USDA executed in order to coerce Gilmer–Glenville to sign the Deposit Agreement. Gilmer–Glenville also alleges that the USDA breached the Loan Agreement through its coercive conduct. Finally, Gilmer–Glenville says the USDA has violated the Takings Clause of the Fifth Amendment by attempting to divest Gilmer–Glenville of the Reserve Account funds and by refusing to approve any expenditures with those funds.

The Court now considers each of these claims.

## II. Analysis

### A. Administrative Procedures Act

The APA provides that any agency action made reviewable by statute is subject to judicial review thereunder. *See* 5 U.S.C. § 704. Under 7 U.S.C. § 6999, actions by the USDA are subject to judicial review. However, a party seeking to challenge a USDA action must first file an appeal with the National Appeals Division ("NAD"). *See* 7 U.S.C. § 6912(e). Once the NAD rules on the appeal, the party may seek judicial review of the NAD's ruling. *See* 7 U.S.C. § 6999.

Here, Plaintiff Gilmer–Glenville challenges six actions taken by the USDA. However, Gilmer–Glenville has appealed only three of these actions to the NAD. The USDA contends that the Court can only review these actions.

---

**1.** Rural Development was formerly referred to as the Farmers Home Administration.

Arguing otherwise, Gilmer–Glenville says the USDA has waived any objection regarding the lack of an administrative appeal. According to Gilmer–Glenville, the USDA had to raise Gilmer–Glenville's failure to exhaust its administrative remedies as an affirmative defense. Because the USDA has not done so, Gilmer–Glenville argues that the USDA has waived this defense.

■ However, the failure to exhaust administrative remedies in this context is not an affirmative defense, but rather a jurisdictional requirement to filing suit in federal court. When Congress establishes an exhaustion requirement in a particular statute, the requirement is jurisdictional. See *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C.Cir.1984) (stating that exhaustion is a jurisdictional prerequisite only by explicit congressional mandate). Here, Congress has decided that a person must exhaust "all administrative appeal procedures... required by law before the person may bring an action in a court of competent jurisdiction" against the USDA. 7 U.S.C. § 6912(e); *Calhoun v. USDA Farm Service Agency*, 920 F.Supp. 696, 701–02 (N.D.Miss.1996) (finding that exhaustion is a jurisdictional prerequisite to suits against USDA). Thus, the Court will only review those USDA actions that Gilmer–Glenville has already challenged with the NAD.

Specifically, the Court considers Gilmer–Glenville's claim that the USDA acted improperly in (1) refusing to approve a $1 per unit increase in the management fee paid to the firm responsible for managing the housing complex, (2) refusing to approve certain accounting expenses included in Gilmer–Glenville's proposed budgets, and (3) refusing to approve a $20 per month rent increase for each unit. The NAD denied Gilmer–Glenville's appeal with regard to each of these actions.

In reviewing an agency action under the APA, the Court determines whether the agency acted in an arbitrary or capricious manner.[2] The arbitrary and capricious standard of review requires a reviewing court to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

### 1. Management Fee Increase

Gilmer–Glenville first challenges the USDA's decision to reject a proposed increase in the management fee paid to the firm responsible for managing the housing complex. According to Gilmer–Glenville, the USDA rejected the proposed increase because Gilmer–Glenville refused to sign the new Deposit Agreement. Because it contends that it is not required to sign the Deposit Agreement, Gilmer–Glenville says the USDA could not properly consider the lack of a signed Deposit Agreement in evaluating the request for a management fee increase.

The Court agrees that Gilmer–Glenville is not required to sign the Deposit Agreement. The Loan Agreement does not require the placement of Reserve Account funds in a supervised bank account. The USDA seeks to alter this aspect of the Loan Agreement by requiring Gilmer–Glenville to sign the new Deposit Agreement. However, the Loan Agreement states that any modification to its provisions requires mutual consent. Thus, while it may agree to modify the Loan Agreement by signing the Deposit Agree-

---

2. In conducting this review, courts must focus "on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). But here, the USDA has not designated which of its exhibits comprise the official administrative record.

The Court thus considers all of the evidence presented by the parties in conducting its review. Cf. *Sierra Club v. Slater*, 120 F.3d 623, 638–39 (6th Cir.1997) (noting that courts may review evidence outside the administrative record when agency fails to accurately compile the record).

ment, Gilmer–Glenville is not required to do so.

Contrary to the USDA's suggestion, the fact that the Deposit Agreement stems from the USDA's regulatory action is of no moment. The Loan Agreement does not include a provision stating that its terms are subject to future USDA regulations. Although the USDA has included such a provision in other loan agreements, it chose not to do so here.

The Court recognizes the USDA's interest in limiting borrowers' misuse of Reserve Account funds. The USDA is free to require future borrowers to place such funds in a supervised bank account. It may also require those borrowers whose loan agreements are subject to future regulatory action to comply with the supervised account requirement. But the USDA cannot use its regulatory power to alter its contractual agreement with Gilmer–Glenville. *See Yankee Atomic Elec. Co. v. United States,* 112 F.3d 1569, 1575 (Fed.Cir.1997) ("The Government-as-contractor cannot exercise the power of its twin, the Government-as-sovereign, for the purpose of altering, modifying, obstructing or violating the particular contracts into which it has entered with private parties.") (citing *United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996)).

■ Accordingly, the USDA could not properly consider Gilmer–Glenville's refusal to sign the Deposit Agreement in deciding whether to approve the requested management fee increase. However, the Court does not find any credible evidence suggesting that Gilmer–Glenville's refusal to sign the Deposit Agreement factored into the NAD's approval of the USDA's decision.[3]

In affirming the USDA's rejection of the proposed fee increase, the NAD never referenced the lack of a signed Deposit Agreement. Rather, the NAD observed that the proposed $26 per unit management fee exceeded the average fee for similar units in the area. The NAD further noted the absence of any special circumstances warranting a higher management fee at Gilmer–Glenville's complex. Because the NAD's decision arose from a reasonable consideration of the relevant factors, the Court finds no abuse of discretion.

### 2. Accounting Expenses

Next, Gilmer–Glenville says the USDA improperly refused to approve certain accounting expenses included in its proposed budgets. Gilmer–Glenville contends that the USDA refused to approve these expenses in retaliation for Gilmer–Glenville's refusal to sign the Deposit Agreement.

Again, the Court finds no evidence suggesting that the NAD considered Gilmer–Glenville's failure to sign the Deposit Agreement in affirming the USDA's decision. The NAD instead based its affirmance on regulations governing the accounting expenses at issue.

■ Specifically, the NAD explained that the disputed accounting expenses, which pertain to the preparation of IRS Form 1065, are acceptable administrative expenses only if the borrower incurred them in the course of obtaining a required audit report. *See* 7 C.F.R. § 1930, Subpart C, Exhibit B, Paragraph XIII C 2 d(1)(i)(B) and (C). Such an audit report is required only if (1) the borrower's housing project has 25 or more units or (2) the USDA specifically orders the borrower to obtain an audit report. Because neither situation applied to Gilmer–Glenville, the NAD determined that the expenses of preparing IRS Form 1065 could not be included in the proposed budgets. The Court finds no abuse of discretion in this determination.

---

**3.** Although the USDA at first cited the lack of signed Deposit Agreement in refusing to approve an increase in the management fee, the NAD affirmed the USDA's action without reference to the Deposit Agreement.

### 3. Rent Increase

■ Finally, Gilmer–Glenville challenges the USDA's refusal to approve its 1999 request for a $20 per unit increase in monthly rent. As explained below, the Court finds that the NAD abused its discretion in affirming the USDA's decision.

The USDA rejected Gilmer–Glenville's proposed rent increase because the budget submitted along with the request included various unauthorized expenditures. According to the USDA, the project's budget would show a positive balance once these expenditures were removed. Thus, the USDA found no need to approve a rent increase.

The NAD disagreed with the USDA's findings. The NAD concluded that the project's budget would show a negative balance even without the unauthorized expenses. Consequently, the NAD noted that a "rent increase may be in order...." Yet the NAD refused to approve the rent increase, instead opting to require Gilmer–Glenville to submit a new request.

The Court finds that Gilmer–Glenville is entitled to the $20 per unit rent increase it requested in 1999. By all accounts, Gilmer–Glenville has maintained a clean and safe housing complex for its elderly residents. Having done so, Gilmer–Glenville is entitled to a reasonable return on its investment. The modest rent increase proposed by Gilmer–Glenville will bring the complex's budget into balance and ensure Gilmer–Glenville receives such a return.

Consequently, the USDA is hereby ordered to approve the requested rent increase effective immediately. Further, the USDA will pay Gilmer–Glenville the amount of increased rental revenues that would have been received had the USDA initially approved the request.

### B. Breach of Contract

Gilmer–Glenville next brings a claim for breach of contract against the USDA. In particular, Gilmer–Glenville says the USDA breached the Loan Agreement by conditioning its approval of requests for a rent increase and Reserve Account expenditures on Gilmer–Glenville's execution of the Deposit Agreement.

As explained above, the Court finds that, under the Loan Agreement, the USDA cannot require Gilmer–Glenville to sign the Deposit Agreement. Thus, to the extent that it conditioned the performance of its contractual duties on Gilmer–Glenville's execution of the Deposit Agreement, the USDA is in breach of the Loan Agreement.

■ However, Gilmer–Glenville fails to show how it suffered monetary damage from any breach on the part of the USDA. Gilmer–Glenville only suggests that the value of the housing project is considerably less than it would be had the USDA properly evaluated its requests to increase rent revenues and make Reserve Account expenditures. The Court finds such a claim for damages speculative at best.

Because Gilmer–Glenville brings its contract claim under the Tucker Act, the Court can only award monetary damages for any breach. See 28 U.S.C. §§ 1346, 1491; *Veda, Inc. v. United States Dept. of the Air Force*, 111 F.3d 37, 39 (6th Cir. 1997) (noting that Tucker Act applies to claims against federal government for monetary damages, not injunctive relief). Having failed to adequately show monetary damage, Gilmer–Glenville cannot recover on its breach of contract claim.

### C. Takings Clause

Finally, Gilmer–Glenville makes claim under the Takings Clause of the Fifth Amendment. Specifically, Gilmer–Glenville says the USDA is attempting, with the new Deposit Agreement, to take the funds Gilmer–Glenville deposited into the Reserve Account. Further, Gilmer–Glenville contends that the USDA has committed an unconstitutional taking by refusing to approve various Reserve Account expenditures.

■ The Court finds that Gilmer–Glenville has failed to establish a claim under the Takings Clause. First, the USDA has not taken the funds placed in the Reserve Account by Gilmer–Glenville. Nor is the USDA attempting to do so with the Deposit Agreement. The Deposit Agreement, which Gilmer–Glenville is under no obligation to sign, merely gives the USDA a security interest in Reserve Account funds.[4]

■ Second, the USDA has not violated the Constitution by failing to approve Gilmer–Glenville's requested Reserve Account expenditures. The Taking Clause "has limited application to the relative property rights of party litigants when those rights have been voluntarily created by contract." *See Chevron Chemical Corp. v. United States*, 5 Cl.Ct. 807, 811 (1984); *J.J. Henry Co. v. United States*, 188 Ct.Cl. 39, 411 F.2d 1246, 1249 (1969). Instead, an interference with contractual rights typically gives rise to a breach of contract claim. *See Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786, 818 (1978). And the Court has already found that Gilmer–Glenville is not entitled to recover on its contract claim that raises the same argument asserted here.[5]

### III. Conclusion

For the reasons stated above, the Court finds that Gilmer–Glenville is entitled to limited recovery on its claims against the USDA. Specifically, under the APA, the Court sets aside the USDA and NAD's rejection of Gilmer–Glenville's request for a $20 per unit rent increase. However, the Court does not find that Gilmer–Glenville is entitled to recover on its claims for breach of contract and an unconstitutional taking.

IT IS SO ORDERED.

### ORDER

The Court has entered its opinion in the above-captioned matter. For the reasons stated therein, the Court finds that Plaintiff Gilmer–Glenville is not entitled to recover on its breach of contract and unconstitutional takings claims. However, under the APA, the Court sets aside the USDA and NAD's rejection of Gilmer–Glenville's request for a $20 per unit rent increase. Thus, the USDA is hereby ordered to approve the requested rent increase effective immediately. Further, the USDA will pay Gilmer–Glenville the amount of increased rental revenues that would have been received had the USDA initially approved the request.

This case is hereby terminated under Fed.R.Civ.P. 58.

IT IS SO ORDERED.

4. When read in its entirety, the provision Gilmer–Glenville says effects an unconstitutional taking clearly does nothing more than create a security interest in Reserve Account funds: The Depositor hereby assigns, transfers, and pledges to the Government the aforesaid account and deposit(s), heretofore or hereafter made, and conveys to the Government a security interest in all money deposited in said account, as security for the repayment of any and all indebtedness now or hereafter owing by the Depositor to or insured by the Government, and for the performance of the obligations and agreements of the Depositor in connection with such indebtedness.

5. Gilmer–Glenville brings its Takings Clause claim, like its breach of contract claim, under the Tucker Act. Thus, Gilmer–Glenville can only recover monetary damages from any alleged taking. Because, as explained with regard to the contract claim, Gilmer–Glenville has not sufficiently shown any monetary damages resulting from the USDA's actions, Gilmer–Glenville could not recover on its Takings Clause claim in any event.